Our next argument is in Appeal No. 23-3124, the United States v. Darrius Agnew. Mr. Hoover, nice to see you. Mr. Temkin is here. Okay. Good morning, Your Honors. My name is Alex Hoover. May it please the Court. I'm an attorney from Plymouth, Indiana. I represent the appellant, Darrius Agnew, on this matter. We filed our appellant's brief back in January of this year with the clear, concise issue being whether or not the district court abuses discretion when it sentenced Mr. Agnew to two years. The backdrop to that issue was that at an initial hearing on April 4th of 2023, Mr. Agnew was advised that the conduct that he had allegedly committed would classify as a Grade C violation with a range of 8 to 14 months on that violation. He was also advised that he had the right to a preliminary hearing, which he exercised at that hearing. I'm sorry? Was that correct? Was he entitled to a preliminary hearing on the question of probable cause? I was going to get to this, but I'll answer it now. The Federal Rule 32.1 does state that normally speaking, a defendant must be incarcerated and not be at liberty to be entitled to one of those hearings. So my question is, looking at the Rule 32.1, he appeared on a summons, so that means he was not in custody. Is that correct? That's correct. Okay. So looking at the Rule, was he entitled to a probable cause hearing or a preliminary hearing? Under the plain language of the Rule, no. I will concede that. However, in this particular case, my magistrate, Gotch, advised him he was entitled to that preliminary hearing. And I believe that by the district court through its magistrate advising him he was entitled to it and him electing to say, I do want one, I believe that it essentially bestowed him an extra protection there. He was advising at the initial hearing that this was going to be a Grade C violation. Eventually, he would waive that preliminary hearing. So that was waived through a stipulation with the government. So the preliminary hearing never happened. However, that was done under the color that he had been advised that this was a Grade C violation of 8 to 14 months. I believe Magistrate Gotch in that hearing specifically used the words that he ought to receive between 8 and 14 months. Well, there's ultimately a revocation proceeding that happens, right? He's not detained. There's no argument here that he had no idea what was going to happen at the revocation hearing. I mean, he knew what the alleged violation was. It was the domestic matter, right, with the girlfriend or wife or something. Correct. So the allegations at the Indiana State level. Yeah, he knew what was being alleged. Yes. And he went into the revocation hearing. He had counsel at the revocation hearing. Yes. I have a hard time seeing, like, what possible prejudice would he have suffered from not having a preliminary hearing? He's never incarcerated. Judge, so essentially what I'm asking for here is an extension of the LeBlanc framework under the totality of the circumstances. And the way that I'm getting to that in this particular instance is that he was advised that this was going to be a grade C violation. That was based upon the fact that at the state level, he was actually charged with a Class A misdemeanor, domestic battery. Eventually, that case was dismissed altogether, and that had formed the basis of most of the allegations. There were some technical violations in there. That was the main one. That was dismissed. However, three days before the revocation hearing, the government, through its probation department, files this recommendation. And that is the very first time we see that they're going to proceed forward with it as a grade B violation. And the way that they're getting to that is that they are alleging that that conduct was a Level VI felony at the Indiana State level. And that's permitted, right? If we look at Section 7B1.1A.2 of the guidelines, they're permitted to look at that underlying conduct to determine, and they're not limited to a conviction. Correct, Your Honor. Or even the charges below. Correct. So in essence, we have here a probable cause that you're not entitled to, and then we have a dismissed misdemeanor that is treated by the probation office as a grade or a Class VI felony. Level VI felony, yes. Yes, they were treating it as a Level VI felony at the state level, even though it was not charged that way. And essentially, that is what kind of bumps this up into being a grade B violation. Well, he knew that. He knew that going into the revocation hearing, so he could have admitted it. He could have chose to contest it. He's got all of his rights are intact. Judge, he did not know that until the day of the hearing, which I think the transcript does reflect. He was not aware that they were essentially asking for it as a grade B violation until the day of the hearing. So it is true that you've been. But your argument here is not that the hearing is, that his due process rights were somehow violated. That's not the argument you're making, right? In other words, you're not before us saying that the actual revocation hearing itself was defective. Your argument is about this preliminary hearing business. Yes, to an extent. I am saying that the LeBlanc framework, though, should extend into that revocation hearing, because LeBlanc actually states in there that all of the rights in Rule 32.1 should include that preliminary hearing would basically need to be knowing and voluntary if they're waived. My argument is that his waiver of that preliminary hearing was not knowing and voluntary. But 32.1 does not mandate a preliminary hearing if you're not in custody. Correct. And it's almost like you're arguing like some version of like a stopple. It's like you're saying that the judge made a statement about a preliminary hearing. My client relied upon it to his detriment and therefore not holding the preliminary hearing violated his legal rights. I wouldn't have framed it that way, Your Honor, but I think that's a fair statement to say that is somewhat of an estoppel argument. I'm saying that and acknowledging that, yes, in the rule it does not actually say that a defendant is entitled to a preliminary hearing if they are not in custody. He was not in custody. But it's not a structural error, right? Even if you're right on that theory, all right, and that's a big even if, what possible prejudice befell your client? The prejudice being, Your Honor, that essentially there's a backdrop here of six months where we are under the impression that this is going to be what he's facing, 8 to 14 months. And I acknowledge that the judge, regardless of that, could have gone up two years. I acknowledge that. But he's under this impression for six months that he's looking at a range of 8 to 14 months. The day of the hearing, he gets there. What is the purpose of the probable cause hearing? I'm sorry? If we look at the advisory notes for 32.1, what is the purpose of the probable cause hearing, of the preliminary hearing? The purpose would be to alert a defendant to essentially what the allegations are against them and be able to call, if they elect you to call witnesses for that hearing. It's to ensure that a person's liberty is not taken away from them without there being a determination of probable cause. There was no liberty taken away from Mr. Agnew because he was not in custody. And I believe that, considering that the court did extend that to him, I believe that we do have the right to basically have the government call its witnesses at that hearing. It could have completely changed the trajectory of the case had that occurred. But there was a revocation hearing where witnesses were presented and testimony was provided. The judge did give that due process. That is correct. That's what's odd about your argument. Your argument is not that the revocation hearing itself is tainted. Because I could understand it if you said, my client stood up and was waving his arms around and said, hold on, hold on, hold on. This is not my understanding of what I've been charged with. This is not my understanding of what my sentencing exposure is. I object to going forward. This is all a big shock to me. That's not what your case is. Well, Judge, just a point of clarification. I am arguing that it was tainted from this process. It is, and I think this is to the government's final point in their brief, that despite all that, no motion to continue was made and a request for a preliminary hearing was not made at that revocation hearing. I take that as a fair point. I think it's more of a practical circumstance that the defendant is walking in there on that day and has to make a decision on that day with brand new information that suddenly he's facing a recommended range of 21 to 24 months. But that was not a result of a denial of a probable cause hearing. I understand your point. Yeah, no, look, he dealt you a tough hand. So why don't we, let's hear it from the government and we'll let you make a revocation. Thank you. Yep, you're welcome. I understand. Okay, Mr. Temkin. May it please the court. Good morning, your honors. Eli Temkin for the United States. I'll be brief. Did Judge Godish make a mistake by advising Mr. Agnew that he was entitled to a preliminary hearing? He said more than was required by the rule. A preliminary hearing was not required. The rule doesn't preclude a preliminary hearing, but he was saying more than the rule required. With that, under the federal rules, Mr. Agnew simply did not have a right to a preliminary hearing because he was not in custody. So there was no error for the magistrate to accept the waiver of a nonexistent right. It's different from the LeBlanc case that Mr. Agnew cites. LeBlanc involved a final revocation hearing, and the considerations are just entirely different with respect to a preliminary hearing that's not required. Beyond that, Mr. Agnew didn't suffer any prejudice and didn't suffer any impediment to his substantial rights through the waiver of this hearing because, again, he had no right to wait in the first place. Next, any issue was resolved through the final revocation hearing that was valid and that Mr. Agnew doesn't challenge on appeal. A valid final hearing resolves any problems with preliminary proceedings. On the question of prejudice, really quickly, did the judge correctly advise Mr. Agnew at that initial appearance of the maximum statutory term of imprisonment?   Yeah. All along the way from the initial hearing, from the documents filed by the probation office, everything stated the statutory range correctly as zero to two years. All right. And so how did it change from when it was a grade B versus a grade C violation, the recommended range? The grade B, the nature of the grade B violation, what turned into a grade B violation was that it was a state law felony, which was based on Mr. Agnew's prior battery convictions. And what was that range? What was the recommended sentencing range? As a grade C violation under the federal guidelines, the recommended range would have been eight to 14 months. And then as – excuse me, that was as a grade C violation. As a grade B violation, the guidelines recommendation would have been 21 to 27, but it was capped at 24 months. Mr. Agnew still has not identified anything that he would have done differently had he been advised that it was a grade B violation earlier on. And so to the extent that he's arguing about notice, he has no basis for reversal there. As far as notice, all that's required is to provide enough basic facts to identify the conduct at issue. It's not required that the defendant – I think he's arguing more so, more pointed, that if I had known that I was looking at a grade B violation and not grade C, I would not have waived my probable cause hearing. Does that matter? No, Your Honor, it doesn't. Because the probable cause hearing, the preliminary hearing, is just to determine whether there is probable cause to hold a person in custody. Mr. Agnew wasn't in custody, so there was no need for a preliminary hearing. To the extent his argument could be construed to say that the final hearing was somehow tainted because he wasn't on notice before of the higher advisory range, he doesn't identify anything that he would have done differently in preparing for that hearing. In the final hearing, he seriously contested the allegation. He – his counsel cross-examined witnesses. He put on a witness of his own. He was prepared for this, and he fought it. He hasn't identified anything that he would have done differently if he had been advised that it was a grade B violation earlier on. And at that final hearing, right at the outset, the government said, this is a grade B violation, and the court also sat and explained, this is a grade B violation. This is what the advisory guidelines range would be. And the court asked him, do you need time to confer with counsel? He said yes. He talked it over with counsel. He told the court he had enough time to have any questions answered. He didn't demand a preliminary hearing. He went ahead with the final hearing. He contested the evidence. He put on his own evidence, and the court reached the outcome that it did. Beyond that, it's not clear what the remedy even would be here, given that there was a valid final revocation hearing in which the court found that he had violated his supervised release. For all those reasons, there was no error, let alone a plain error or one that would have affected Mr. Agnew's substantial rights. Unless there are additional questions, the government asks the court to affirm. OK, Mr. Kempkin, thank you. Mr. Hoover, you're welcome to give some rebuttal. I'll introduce your Honor. Judge, just one point to make, what the remedy would be. Our request would be that the judgment be vacated, that it be remanded for further proceedings. Because our argument is that, had he known that this was going to be the route that it's going to take, that it more than likely would have turned out differently. Now, that's not based on anything in the record. Obviously, I can't look at the record. I mean, you're just saying, look, that this is his position, and it tainted everything that followed. That's correct, Your Honor. And therefore, everything that followed needs to be unwound. Go back to the point where the error occurred. Yes. And let's do it over. Correct, Your Honor. I understand. Thank you. Okay, Mr. Hoover, thank you. You took this case on appointment, did you not? I did, Your Honor. We very much appreciate that. I know we asked you some hard questions, but we appreciate your service to your client and to the court. Mr. Kempkin, as always, thanks to you. We'll take the appeal under advisement.